## Penn Hills Township Redivision.

Argued November 12, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Louis R. Paulick,* for appellant.

*Edgar J. Cooke,* for appellees.

OPINION BY WATKINS, J., March 19, 1970:

This is an appeal from the decree of the then Court of Quarter Sessions of Allegheny County dismissing exceptions of certain citizens and taxpayers and confirming absolutely the report of the Commission appointed by the Court, In Re: Redivision of the Township of Penn Hills, Allegheny County, Commonwealth of Pennsylvania, into Wards. Appeal to this court followed.

It is admitted that the alignment of wards contained in the plan of the Commission was based upon voter registration and not population. We held in the *Lower Merion Twp. Appeal,* 215 Pa. Superior Ct. 363, 257 A. 2d 264 (1969), at page 366, that: "The Constitutional requirement for reapportionment is, as has always been the case, based upon population and while registration may be an indication of the need, it should not be the sole criterion nor the basis upon which reapportionment is had."

It is, however, important to examine some of the cases in the Federal Courts where the problem has been discussed and met. The Supreme Court of the United States has determined what is now known as the "one man-one vote" standard for redistricting. *Reynolds v. Sims,* 377 U.S. 533, 12 L. Ed. 2d 506, 84 S. Ct. 1362 (1964). This applies to local government. *Avery v. Midland County,* 390 U.S. 474, 20 L. Ed. 2d 45, 88 S. Ct. 1114 (1968).

The Supreme Court of the United States has also indicated that the "as nearly as practical" standard cannot be reduced to a fixed mathematical formula. *Kirkpatrick v. Preisler,* 394 U.S. 526, 22 L. Ed. 2d 519, 89 S. Ct. 1225 (1969). In that case, the plan of redistricting was rejected where the average variation from the ideal population was 1.67% while in *Wells v. Rockefeller,* 394 U.S. 542, 22 L. Ed. 2d 535, 89 S. Ct. 1234 (1969), the plan rejected had a variation of 6.67%. In the instant case, the claimed variations go as high as 20%.

In *Burns v. Richardson,* 384 U.S. 73, 93, 96, 16 L. Ed. 2d 376, 391, 393, 86 S. Ct. 1286 (1966), the legislature of Hawaii was reapportioned on the basis of voter registration figures rather than population. It was approved and the court explained in detail the peculiar circumstances that existed in the Hawaii situation, saying at page 93: "In view of these considerations, we hold that the present apportionment satisfies the Equal Protection Clause only because on this record it was found to have produced a distribution of legislators not substantially different from that which would have resulted from the use of a permissible population basis." However, the court continued at page 96, saying: "We are not to be understood as deciding that the validity of the registered voters basis as a measure has been established for all time or circumstances, in Hawaii or elsewhere."

The court seemed to be straining in this case as indicated by what the opinion writer, Mr. Justice BRENNAN, said at pp. 92, 93 concerning the evil of the use of registration figures for reapportionment: "Use of a registered voter or actual voter basis presents an additional problem. Such a basis depends not only upon criteria such as govern state citizenship, but also upon the extent of political activity of those eligible to register and vote. Each is thus susceptible to improper influences by which those in political power might be able to perpetuate underrepresentation of groups constitutionally entitled to participate in the electoral process, or perpetuate a 'ghost of prior malapportionment.' Moreover, 'fluctuations in the number of registered voters in a given election may be sudden and substantial, caused by such fortuitous factors as a peculiarly controversial election issue, a particularly popular candidate, or even weather conditions.' Ellis v. Mayor & City Council of Baltimore, 352 F. 2d 123, 130 (C.A. 4th Cir. 1965). Such effects must be particularly a matter of concern where, as in the case of Hawaii apportionment, registration figures derived from a single election are made controlling for as long as 10 years."

We can take judicial notice of the increase in registration figures in Presidential election years and the decline thereafter as a result of strike offs from the registration rolls of those who failed to vote at the two subsequent elections.

In the *Burns* case, supra, *Ellis v. Mayor and City Council of Baltimore,* 352 F. 2d 123 (1965), was cited with approval. In that case the Court of Appeals of the Second Circuit considered a plan of redistricting councilman seats in the City of Baltimore, Md. on the basis of registration figures. The court compared the variances from one district to another compared to population figures. It objected to a variance of 3%

in one case where the population figures would produce only a variance of 1.37%.

In the instant case, the claimed variations are much higher than the cases where the plans were rejected by the Federal Courts and at the very least raise serious doubt and suspicion that the plan falls far short of the "as nearly as practical" standard and make it politically suspect. See also, *Kirpatrick v. Preisler,* supra.

We hold, therefore, that the plan does not meet the "one man-one vote" standard established by the Supreme Court of the United States to meet the requirements of the 14th Amendment of the Constitution of the United States.

The contention of the appellants that if the report of the Commission is rejected, the Commission must be dismissed by virtue of Article IX, §11 of the new Constitution effective April 23, 1968, is without merit.

In the *Macungie Twp. Annexation Case,* 213 Pa. Superior Ct. 313, 248 A. 2d 58 (1968), this court held as follows at page 319: "We do not accept appellants' argument that this provision, although it became effective immediately upon adoption, has a retroactive effect so as to invalidate all annexation proceedings pending at the time it became operative. Constitutional provisions operate prospectively and do not operate retrospectively unless the language used or the purpose of the provision indicates that operation was intended. Perkins v. Slack, 86 Pa. 270 (1878)." We also held in that case that the Constitution did not indicate such an intention.

The *Macungie* case dealt with annexation under the Act of June 24, 1931, P. L. 1206, as amended, 53 PS §55401 et seq. However, this is the same Act under which the present proceedings of Redivision of Wards was instituted. We agree with the court below that: "While the Lower Macungie Township Annexation Case (No. 1), supra, differs from the instant case

in that proceedings in the Macungie case were completed when Proposal 6 was adopted by the Legislature, it is to be noted that the Superior Court in refusing to accept the appellants' argument that Proposal 6 had a retroactive effect, included not only annexation proceedings that had been completed but annexation proceedings which were pending. That reasoning ties in with the further proposition of law that constitutional provisions operate prospectively and do not operate retrospectively unless the language used or the purpose of the provision indicates that operation was intended. Perkins v. Slack, 86 Pa. 270."

As a practical matter the Commission has the machinery of the Federal decennial census to provide the population figures without additional cost to the township. These figures shall be available to the Commission so that the redivision on the basis of population can be determined before the municipal election of 1971.

The plan of the Commission for the Redivision of the Township of Penn Hills, Allegheny County, Pennsylvania into Wards is rejected. The record is remanded to the court below with the direction that it be referred to the Commission to proceed with the Redivision on the basis of population in accordance with this opinion.