In Re: Ross Township Election District Reapportionment. Appeal of Lori Heiser et al., Appellants.

234

.Argued March 11, 1985, before Judges CRAIG, COLINS and PALLADINO, sitting as a panel of three.

*Robert L. Byer, Eckert, Seamans, Cherin & Mellott,* for appellants.

*David G. Ries,* with him, *John D. O'Brien, Thorp, Reed & Armstrong,* for appellees.

OPINION BY JUDGE CRAIG, March 13, 1985:

A group of electors from Ross Township appeals a decision of the Court of Common Pleas of Allegheny County, which accepted the report of a reapportionment commission and thereby reapportioned Ross Township from nine to seven wards. The issue for our determination is whether the trial court erred in its earlier order setting aside the township's first reapportionment plan.

The complex history of the case began when the township adopted, on December 27, 1982, a reapportionment plan which two township commissioners serving as a reapportionment committee had prepared; that plan maintained the township's division into nine wards. A group of township electors filed a petition contesting the plan, and on February 4, 1983, after holding an evidentiary hearing, Judge (now Justice) PAPADAKOS set aside the reapportionment plan and ordered the appointment of a reapportionment commission, pursuant to section 6 of the Municipal Reapportionment Act, Act of December 13, 1974, P.L. 947, 53 P.S. §11606. This court quashed as interlocutory the township's appeal of that order, and Judge NARICK of the common pleas court then appointed the reapportionment commission.

On January 21, 1985 Judge NARICK entered a decree nisi confirming the commission's report and new reapportionment plan, which divides the township into seven wards; a second group of electors petitioned the court to intervene and filed exceptions to the commission's report. Without conducting an evidentiary hearing, Judge NARICK permitted the intervention but denied the exceptions and also denied the intervenors' request for a stay of the implementation of the new plan. On February 21, 1985, Judge NARICK entered a

final decree confirming the commission's report and reapportioning the township into seven wards.

The electors' principal contention is that Judge PAPADAKOS erred in setting aside the township's first reapportionment plan. The appointed reapportionment commission, appellee here, defends the trial court's decision, arguing that the original reapportionment committee had considered impermissible factors—specifically socioeconomic conditions, geographic and topographic factors—and had used voter registration data and a count of houses rather than relying exclusively upon census data.

The relevant statute, section 3 of the Municipal Reapportionment Act, 53 P.S. §11603, implements Article 9 §11 of the Pennsylvania Constitution; the Act provides:

Districts shall be composed of compact and contiguous territory as nearly equal in population as practicable as officially and finally reported in the most recent Federal census, decennial or special.

That provision furthers the "one person, one vote" requirement of the Fourteenth Amendment of the United States Constitution, *Reynolds v. Sims,* 377 U.S. 533 (1964), and reflects the constitutional imperative that districts for local elections, as for state and federal elections, must be substantially equal in population. *Avery v. Midland County,* 390 U.S. 474 (1968).

John McAfee, one of the two members of the original committee, testified that their principal considerations in establishing ward boundaries were population equality among the wards, maintenance of the current number of wards and their boundaries where possible, and recognition of "geographic areas", explained as maintenance of a neighborhood as a unit within one ward.

Census data provided the necessary population figures, he testified. The township consisted of 296 census blocks, and for the twelve blocks which were not wholly included within a single ward, the committee relied on voter registration data for population figures for each street, data not available from the census. The committee also attempted a rough verification of those voter registration figures by counting the number of houses on each of the divided streets.

The reference, at a public meeting, by one of the committee members to their attempt to retain "socioeconomic patterns" in the ninth ward was, perhaps, the genesis of the objections to the plan. That member, Mary Daly, testified that she had employed "very poor wording" to express herself. She explained that she had been referring to their attempt to include entire neighborhoods within the same ward. She further testified, as did Mr. McAfee, that they did not have any socioeconomic data available to them, i.e. information on race, religion, income, or designation of "poverty areas"; they both also stated that their own knowledge of those factors played no part in the formulation of their plan.

The reapportionment plan, as the township adopted it, maintained 81% of the former ward boundaries. The twelve census blocks which were divided between wards included less than 7% of the population, and each of the nine wards reflected a population figure within 1.7% of the goal of 3,900 persons (one-ninth of the township's population).

With respect to the statutory considerations, Judge PAPADAKOS found that each of the originally-proposed nine wards had "almost identical population figures"; he also found that the districts "certainly" were "compact and contiguous". Judge PAPADAKOS set aside the

238

plan, however, "[b]ecause of the indications that perhaps socio-economic conditions may have been considered" and because the original committee also took topographic, geographic and neighborhood factors into account.

Judge PAPADAKOS' findings unequivocally indicate his conclusion that the proposed plan satisfied the constitutional and statutory requirements of population equality, compactness and contiguousness. The plan's fatal flaw, he concluded, stemmed from the committee's consideration of what he termed constitutionally impermissible factors.

The cases have firmly established, as the trial court implicitly recognized, that a reapportionment plan which satisfies the initial constitutional requirement of population equality may nevertheless be constitutionally infirm if the boundaries operate to the disadvantage of an identifiable protected class. *Gaffney v. Cummings,* 412 U.S. 735 (1973). Where boundaries function either to "fence out" a protected group or to cancel or minimize its voting strength, the plan violates the equal protection clause of the Fourteenth Amendment and must fail. *City of Mobile v. Bolden,* 446 U.S. 55 (1980); *Gaffney,* 412 U.S. 735 (1973).

Evidence that planners considered existing political subdivisions, or natural or historical boundary lines, does not without more, establish an equal protection violation. *Reynolds v. Sims,* 377 U.S. 533 (1964). In order to prevail, the challenger to the reapportionment plan must establish a purposeful, intentional discrimination which disadvantages a constitutionally-protected class; the equal protection clause prohibits only purposeful discrimination. *City of Mobile,* 446 U.S. 55 (1980); *Gaffney,* 412 U.S. 735 (1973); *Cook v. Luckett,* 735 F.2d 912 (5th Cir. 1984); *In re Reappor-*

*tionment Plan for the Pennsylvania General Assembly*, 497 Pa. 525, 442 A.2d 661 (1981).

Applying those principles to the present case, we conclude that the township's initial reapportionment plan was not invalid. Neither the burden of going forward with the evidence, nor the ultimate burden of proof, was upon the township. Research has disclosed no authority for relieving the challengers of a reapportionment plan of their burden to establish the alleged defects, and the Supreme Court has uniformly required the challenger to produce a prima facie case of discrimination before the political entity must justify its plan. *See, e.g. Gaffney*, 412 U.S. 735 (1973).

There is no legal foundation for condemnation of the committee's use of "topographical and geographical" considerations. The planners are not confined to the constitutional and statutory requirements of population equality, compactness and contiguousness. The Supreme Court has recognized that reapportionment is inexorably part of the political process, and has concluded that, absent some evidence of discriminatory intent, planners may consider natural and historical boundary lines, as well as those of existing political subdivisions. *Reynolds*, 377 U.S. 533 (1964).

The trial court's statement, that "perhaps socioeconomic conditions may have been used," cannot support a decision to set aside the plan for two reasons. First, the observation does not constitute a finding that the committee did in fact rely on socioeconomic indicators, and second, the record is devoid of evidence that the committee had access to any such data. Both members stated positively that considerations of financial status, race and religion did not intrude upon the formulation of the plan.

Furthermore, the record fails to supply any evidence which either identifies a constitutionally-pro-

tected group or illustrates that the proposed plan would operate to minimize or dilute the vote of such a group. Ms. Daly did testify that, in an attempt to equalize the population of the districts, the plan placed a subsidized housing project for the elderly in a new ward; however, the reapportionment commission has failed to supply any authority identifying the poor or the elderly as a protected class. Also, no evidence indicates that the transfer of the entire unit from one ward to another results in dilution or minimization of the citizens' voting power.

Finally, our review of the record produced no evidence of any intentional or purposeful discrimination by the original reapportionment committee. Failure to introduce such evidence is fatal to the challengers' case. *City of Mobile,* 446 U.S. 55 (1980); *In re Reapportionment Plan for the Pennsylvania General Assembly,* 497 Pa. 525, 442 A.2d 661 (1981).

Although the common pleas court did not find that the use of voter registration information and a house count were defects in the original plan, the reapportionment commission urges that those considerations were improper and therefore constitute independent grounds for its rejection. In *Burns v. Richardson,* 384 U.S. 73 (1966), where reliance on voter registration had resulted in districts with population figures substantially similar to those which use of census data would have produced, the Supreme Court concluded that the use of voter registration data is not necessarily fatal to a reapportionment plan. The commission has failed to supply authority, and our research has disclosed none, which condemns the innocuous practice of counting the number of houses on a street as a supplement to population data. Where, as here, the planners used the registration and house count in-

formation only as a supplement to the less-detailed census figures, we find no error.[1]

With respect to the commission's suggestions that the original committee may have attempted to minimize contests between incumbents, the Supreme Court has concluded that such a motive is not, itself, unconstitutional. *Burns,* 384 U.S. 73 (1966). Similarly, that court has rejected the contention that reapportionment with the admitted purpose of approximating the statewide political party strength violates equal protection. *Gaffney,* 412 U.S. 735 (1973).

Here, the fundamental principle is that reapportionment is primarily a legislative function and that the courts should defer to the legislative judgment where constitutional and statutory standards have been satisfied. *Upham v. Seamon,* 456 U.S. 37 (1982). Our own Supreme Court has stressed that review of reapportionment decisions presents a particularly compelling situation for judicial deference to legislative decision-making. *In re Reapportionment Plan for the Pennsylvania General Assembly,* 497 Pa. 525, 442 A.2d 661 (1981); *Newbold v. Osser,* 425 Pa. 478, 230 A.2d 54 (1967).

Accordingly, we reverse the decision of the court of common pleas which accepted the appointed reap-

---

[1] *Lower Merion Township Appeal,* 215 Pa. Superior Ct. 363, 257 A.2d 264 (1969) and *Penn Hills Township Redivision,* 216 Pa. Superior Ct. 327, 264 A.2d 429 (1970), upon which the reapportionment rules for the proposition that use of voter regulation is impermissible, are distinguishable. In *Lower Merion* the court, speaking hypothetically, observed that although voter registration might indicate the need for reapportionment, it should not serve as its "sole criterion" or "basis." Applying that reasoning in *Penn Hills,* where the township had relied solely on voter registration data, the court condemned the reapportionment plan as failing to meet the "one man-one vote" standard of the Fourteenth Amendment. In the present case the commission makes no suggestion, nor could it, that the wards do not satisfy the constitutional population equality requirement.

portionment commission's report as final. We also reverse the earlier decision of that court setting aside the township's reapportionment plan and reinstate that original plan.

Because the deadline for the filing of nominating petitions in this year's primary elections is March 12, 1985, our order has extended that deadline for seven days, until March 19, 1985, for the filing of nominating petitions from Ross Township.

ORDER

Now, March 12, 1985, the order of the Court of Common Pleas of Allegheny County, Misc. Docket No. 6 April Term 1983, dated February 21, 1985, is reversed. The order of that court at the same docket number, dated February 4, 1983, is reversed, and the nine-district reapportionment plan as adopted by Ross Township at Ordinance No. 1427 is reinstated as the sole lawful election district plan for the township, to be implemented for the 1985 elections.

For nominating petitions from Ross Township, the last day for filing nominating petitions in the 1985 primary election is extended from March 12, 1985 to March 19, 1985.

ORDER

Now, March 13, 1985, upon noting the appropriateness of clarifying the extension of time for filing nominating petitions, as granted in the order of March 12, 1985, in this case, it is ORDERED that the extension of time for filing nominating petitions through March 19, 1985, shall apply only to nominating petitions for the offices of Ross Township Commissioner, Judge of Elections and Inspector of Elections, and the extension of time with respect to any other nominating petitions from Ross Township shall apply only through the date of this order, March 13, 1985.