**TOWNSHIP OF LOWER MERION**

v.

**QED, INC., Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 2, 2000.

Decided Nov. 20, 2000.

---

Albert C. Oehrle, Norristown, for appellant.

Gilbert P. High, Jr., Norristown, for appellee.

Before DOYLE, President Judge, FLAHERTY, Judge, and MIRARCHI, Senior Judge.

FLAHERTY, Judge.

This case was previously before this Court wherein it was decided that QED, Inc. (QED) was not liable for the Business Privilege Tax (Tax) of Lower Merion Township (Township) and the Township was not liable for counsel fees requested by QED. 738 A.2d 1066 (Pa.Cmwlth.1999). QED timely filed an Application for Reargument which this Court has granted limited to the issue of counsel fees.

The action arose when Township filed suit to collect the Tax for which QED refused to register and to pay because QED had notified the Township it only engaged in individual transactions in the nature of construction work in the Township, subcontracted it out and had no actual place of business therein. This court held that the site of each individual contracting transaction in the Township was not an actual place of business within the Township under the terms of the Business Privilege Tax as codified in the Township's Tax Code, so QED was not liable to pay the Tax. This Court also denied counsel fees to QED because the action of the Township in filing suit and attempting to collect the tax was not dilatory, obdurate or vexatious conduct under Section 2503(7) of the Judicial Code.[1]

QED then applied for reargument and reconsideration because this Court did not address whether QED was entitled to counsel fees under Section 2503(9) on the grounds that the Township's action of commencing suit was arbitrary, vexatious or in bad faith.[2]

The sole issues raised by QED are whether this Court erred in failing to award counsel fees pursuant to Pennsylvania Rule of Appellate Procedure (Pa. R.A.P.) 2744, to award counsel fees pursuant to the Judicial Code at Section 2503(9) of the Judicial Code or to remand the case to the trial court for a determination of counsel fees. We re-affirm the trial court denial of counsel fees.

The standard of review when the trial court refuses to grant counsel fees is that the reasonableness of the refusal is a matter which rests within the sound discretion of the trial court and will be reversed only when there is a clear abuse of discretion. *West v. Hampton Township Sanitary Authority*, 661 A.2d 459 (Pa. Cmwlth.1995).

In order to award counsel fees under Section 2503(9), the trial court needs to find that the action was commenced arbitrarily, vexatiously or in bad faith. Arbitrary conduct is that which is based on

1.  42 Pa.C.S. § 2503(7).

2.  42 Pa.C.S. § 2503(9).

random or convenient selection or choice rather than based upon reason or nature. Litigation is vexatious when suit is filed without sufficient grounds in either law or fact and if the suit served the sole purpose of causing annoyance. A lawsuit is commenced in bad faith when it is filed for purposes of fraud, dishonesty or corruption. *Thunberg v. Strause*, 545 Pa. 607, 682 A.2d 295 (1996).

QED argues that the Township acted arbitrarily because it knew before filing suit that QED was vigorously asserting its factual and legal grounds for not being subject to the tax and, despite receiving written protestations from QED with specific reasons during a period of almost two years and, knowing that QED adamantly objected to the application of the tax and, even though QED considers that it provided Township with clear knowledge of the facts and the law, the suit was, nevertheless, commenced; all of which proves that QED was a random or convenient selection or choice. Basically the same argument is made to show that the Township acted in bad faith. QED further complains that vexatiousness can be inferred from the conduct of the Township in commencing the litigation because its sole purpose was to cause QED annoyance.

The Township argues that QED has not proven conduct that will sustain any of the three grounds for counsel fees set forth in the Judicial Code and defined in *Thunberg*. We agree with the Township.

■ To be arbitrary, the litigation commenced must be based on random or convenient selection rather than on reason or nature. *Thunberg*. The fact that the Township commenced suit against QED despite receiving written protestations from QED with specific reasons during a period of almost two years while knowing that QED adamantly objected to the application of the tax and even though Township understood QED's position with respect to the facts and the law does not prove, or even create an inference, that the suit was commenced on the basis of a

random or convenient selection or choice or that suit was filed or prosecuted in bad faith. On the contrary, such conduct shows a definite Township focus on QED rather than a random or convenient selection or choice. Also, QED does not point to any evidence which disproves Township's evidence. The trial court found as a fact that the Township has about 5,300 business privilege accounts and "makes an ongoing, comprehensive effort to identify those subject to the Business Privilege Tax, including working internally with the various township departments, checking local newspapers, checking deed registrations, taking information from persons who telephone the Finance Department, checking directories in hospitals and commercial buildings, reviewing general mailings coming to the Township Building, and inspecting signage along the streets." (Findings of Fact No. 13 and 14, trial court opinion at page 4.)

■ QED further argues. that the Township acted arbitrarily and in bad faith when it did not respond to QED's correspondence which QED contends makes it clear that QED had no actual place of business in the Township. QED does not cite any authority in support of its assertion, and we can find none, that a municipality has a duty to explain its construction of its Tax Code to a protesting letter writing taxpayer prior to filing suit to collect its taxes.

QED argues that the Township's refusal to accept QED's interpretation of *Gilberti v. City of Pittsburgh*, 511 Pa. 100, 511 A.2d 1321 (1986) was arbitrary. This argument refuses to accept the Township's reliance upon a written opinion from its solicitor that *Gilberti* was distinguishable from QED's case because Township's tax was based upon businesses within the Township and because each contracting job by QED within the Township was construed as an actual place of business. The trial

court agreed with the Township.[3]

■ We disagreed with the trial court that the term "actual place of business" in its Tax Code referred to a job site. We held that term required, at a minimum, a base of operations, such as an office within the Township, which would create a privilege of doing business out of a base of operations there which would then make its gross receipts subject to the Business Privilege Tax. Our decision does not, however, make Township's commencement of suit and its appeal prior to our interpretation arbitrary, vexatious or in bad faith. Such allegations are also belied by the fact that the Township relied upon a written opinion from its solicitor whose position was acceptable to a learned trial judge who has shown no abuse of discretion and has rendered a lengthy, reasoned decision, part of which is referred to above. A reasonable interpretation of binding precedent can justify the filing of a lawsuit and, even though it fails, it may not rise to the level of bad faith. *Springfield Tp. v. Gonzales,* 158 Pa.Cmwlth. 664, 632 A.2d 1353 (1993), *appeal denied,* 538 Pa. 618, 645 A.2d 1321 (1994). There is no evidence of arbitrariness or bad faith here merely because QED, basically, is convinced its legal position was so sound as to be incontrovertible despite the contrary position of the Township and the trial court.

QED also argues that proof of the arbitrary conduct of the Township is that it chose QED to sue based on a non-uniform application of the tax because only contractors were singled out as a class when they were forced to register and pay building permit application fees which made it convenient to target them for payment of the tax.

■ The Supreme Court has set the standard on challenges to uniformity:

> In cases where the validity of a classification for tax purposes is challenged, the test is whether the classification is based upon some legitimate distinction between the classes that provides a non-arbitrary and 'reasonable and just' basis for the difference in treatment. Stated alternatively, the focus of judicial review is upon whether there can be discerned 'some concrete justification' for treating the relevant group of taxpayers as members of distinguishable classes subject to different tax burdens. When there exists no legitimate distinction between the classes, and, thus, the tax scheme imposes substantially unequal tax burdens upon persons otherwise similarly situated, the tax is unconstitutional.

*Leonard v. Thornburgh,* 507 Pa. 317, 321, 489 A.2d 1349, 1352 (1985). The taxpayer bears a heavy burden to demonstrate that the challenged tax classification is unrea-

---

**3.** Trial court stated:

QED argues that the term 'actual place of business' refers to the location of an office, and not merely a job site. QED cites *Gilberti v. City of Pittsburgh,* 511 Pa. 100, 528 [sic] A.2d 1321 (1986) in support of its argument. In *Gilberti,* the Pennsylvania Supreme Court held that a municipality may, under certain circumstances, levy a business privilege tax upon revenue derived from business activity conducted outside the taxing jurisdiction. QED argues that by implication, *Gilberti* precludes the outlying jurisdiction in which the activity occurred from assessing its own business privilege tax on that activity.

Such an implication is not necessary, since the ordinance in that case allowed the taxpayer to exclude revenue attributable to a 'bona fide office or place of business regularly main-

tained by the taxpayer, outside the City limits,' and the taxpayer in that case did not contend that the job site was a regularly maintained place of business. *Id.* at 103, 528 A.2d at 1323 (emphasis in original). Thus, *Gilberti* never addressed the issue of whether the outlying jurisdiction could have taxed the activity conducted within its borders, and if it had, whether the City of Pittsburgh would then have been precluded from taxing the activity. Moreover, to interpret *Gilberti* as QED does brings the opinion into conflict with the holding in *F.J. Busse Co. v. City of Pittsburgh,* 443 Pa. 349, 279 A.2d 14 (1971), which allowed a municipality to tax foreign corporations for business activities within the city. This court prefers to avoid interpreting *Gilberti* as implicitly overruling *Busse* when the cases may be harmonized.

sonable. *Pennsylvania Builders Ass'n v. Commonwealth, Department of Revenue,* 122 Pa.Cmwlth. 493, 552 A.2d 730 (1989), *affirmed per curiam,* 524 Pa. 134, 569 A.2d 928 (1990).

The Township justifies its classification as non-arbitrary because contractors fit into a class of taxpayers without offices in the Township who have a substantial contact therein by performing the majority of the actual physical, taxable service in the Township for which they are paid as opposed to other non-office service providers who have a brief and/or casual contact with the Township in the course of performing a service, such as, a funeral director whose only service was to remove a deceased in the Township to its place of business outside the municipality, a package pick-up and delivery service, etc.

■ Although we agree with QED that the Township is certainly treating contractors' businesses differently than some other types of businesses, that is not the test of a challenge to uniformity. Since contractors are known to conduct construction projects over much longer periods of time than casual short-time delivery providers, they tend to utilize and need more municipal services and thereby provide a rational basis to support the Township's classification. The trial court properly recognized that the Township uniformly applies the same tax rate to builders or contractors as one specific category of taxpayer within the Township as it does to all other businesses that perform services within the Township.

A lack of uniform enforcement might be apparent if the Township only enforced its tax against QED while not enforcing it against the other contractors who also did not have offices in the Township but operated within it. QED does not argue that it was discriminated against or that it was singled out because the tax was not enforced against the other non-resident contractors. Since there is no lack of uniformity, QED's argument also fails that the

tax was arbitrary because of a non-uniform application of the tax.

In order for QED to prove that the Township's conduct was vexatious the lawsuit must be filed without sufficient grounds and for the sole purpose of causing annoyance. *Thunberg.* QED has proven no facts to support such a claim but argues that it should be inferred from the facts. On the contrary, no such inference can properly be drawn. When the Township filed its lawsuit QED was doing business regularly in the Township. The standard of "actual place of business" in its Business Privilege Tax had not been reasonably tested. *Gilberti* had not been interpreted to apply to the Township's non-resident contractor situation when the Township filed suit against QED. In fact, the distinction between a privilege and a transaction in *Gilberti* was not reviewed by this Court until 1996 when *Airpark International v. Interboro School District (Airpark I),* 677 A.2d 388 (Pa.Cmwlth.1996), was decided on appeal by a split court with a dissent. Further, the *Airpark I* distinction was subject to further review resulting in an evenly split Supreme Court in *Airpark International v. Interboro School District (Airpark II),* 558 Pa. 1, 735 A.2d 646 (1999). *Gilberti* and *Airpark International* exemplify the problems involved in construing the tax statutes and ordinances in the instant case which caused understandable differences of opinion which, although prompting litigation and appeals, are not conduct which is arbitrary, vexatious, bad faith or frivolous.

The sanction of counsel fees will not be applied to chill the assertion of the Township's filing a suit to collect the Tax, the payment of which was disputed from 1989 to 1991 when suit was filed. The lawsuit, although ultimately unsuccessful, was strong enough to convince the trial court and was also strong enough to destroy any proposed inference that the action was commenced solely to annoy QED. If the Township was solely out to annoy QED, it need not have first obtained its solicitor's

opinion concerning the merits of filing that lawsuit. Collecting taxes often causes the person taxed to be annoyed. To be vexatious, however, it must be shown that the sole purpose was purely to annoy the taxpayer which is a heavy burden indeed, since all forms of government historically have had a requirement for citizens to "render unto Caesar," even if it is annoying.

Finally, QED asks this Court to award counsel fees directly without a remand to the trial court and to not follow the Supreme Court's holding in *Gossman v. Lower Chanceford Township Board of Supervisors*, 503 Pa. 392, 469 A.2d 996 (1983), that an appellate court has no power under any statute or rule to award counsel fees for proceedings below. Since the trial court has not abused its discretion in denying counsel fees, we need not reach Appellant's questionable contention for this appellate court to make a direct award of counsel fees without a remand.[4]

That part of the order of the trial court denying counsel fees is, therefore, affirmed.

### ORDER

NOW, November 20, 2000, that part of the order of the Court of Common Pleas of Montgomery County, Pennsylvania, No. 91–19848, dated January 26, 1998, denying the award of counsel fees to Appellant, QED, Inc., is affirmed.

---

4. Ironically, if that issue were to be addressed by this Court, it could possibly subject QED itself to counsel fees in this instance. If this Court applied QED's argument that a challenge of a Supreme Court decision (like *Gilberti* ) is arbitrary and subjects that litigator or appellant to counsel fees, QED would find itself as the challenger of a Supreme Court decision (like *Gossman* ), subject to counsel fees in this case. Further, Pa. R.A.P. 2744 which Appellant also raises is inappropriate where counsel fees are sought for conduct that did not take place in the appellate court. Appellants' contention that this appeal by QED was frivolous is unsupported and is clearly rejected by the reasoning herein and in our previous opinion.