## Susquehanna Coal Company v. Mount Carmel Area School District

C.P. of Northumberland County, no. CV-89-1105.

*William C. Cole,* for plaintiff.

*J. David Smith,* for defendant.

WIEST, *J.,* May 24, 2001—Defendant Mount Carmel Area School District enacted a privilege tax of 10 percent on rental amounts received from the leasing of unimproved lands in 1988. This business privilege tax was enacted by the school district pursuant to section 2 of the Local Tax Enabling Act (Act 511), the Act of December 31, 1965, P.L. §1257, as amended, 53 P.S. §§6901-6924. This tax was applicable to the 1988-1989 school year. Defendant then reenacted the privilege tax for the next two school years (1989-1990, 1990-1991). Susquehanna Coal Company is a Pennsylvania corporation that owns certain tracts of land within the school district. *Susquehanna Coal Company is the only taxpayer subject to this tax.*[1] The tax, according to the testimony

---

1. Several entities were sent notices of enactment of the tax in question on December 5, 1988; these were: Reading Anthracite Co., Consolidated Railroad Corp., Kerris & Helfrick, Lehigh Valley Depot, and Susquehanna Coal Company. See defendant's answers to plaintiff's interrogatories (first set), p. 5. However, as the following testimony reveals, apparently only one company, Susquehanna Coal, was made subject to the tax:

"Cross-Examination . . .

"Q. Besides the entities that you were shown as certified mail exhibit do you remember any other entities that were contacted regarding this particular tax? You had identified them prior on your direct testimony.

"A. To the best of my recollection we just sent—we sent our certified—I thought it was four, I may be wrong—to the four offices I indicated before.

"There may have been a telephone call from Kessler's. I'm not sure if he called and asked for a copy, or if he sent a letter and asked for a copy. But that doesn't show that he got anything.

of those involved in the imposition of the tax, was enacted to generate revenue for the school district's maintenance needs. The tax resolution required a 10 percent assessment on net receipts from the leasing of unimproved property within the Mount Carmel Area School District. The resolution also contained a penalty provision which imposed a penalty rate of 10 percent per month on the unpaid sums due.

Susquehanna Coal Company owned, at the time the tax was imposed upon them, a landfill that it leased to Mount Carmel Township. Mount Carmel Township received dumping fees from this land. Fifteen percent of the fees that the township charged were remitted to Susquehanna Coal. The school district's imposed 10 percent privilege tax resulted in the following amounts averred due (the parties at trial stipulated to these amounts which are 10 percent of the total amounts received by Susquehanna Coal from Mount Carmel Township during the school years mentioned below):

"(a) $6,871.60 for the school year 1988-1989;

"(b) $38,311.08 for the school year 1989-1990; and

"(c) $1,238.37 for the school year 1990-1991."

---

"Q. Just so we're clear on this point, it's my understanding that there were no taxes paid by any of those entities as far as you know?

"A. As far as I know, there were no taxes paid." N.T., videotape deposition of Joseph Warner, January 25, 1993, pp. 42-43.

This notion was bolstered by the testimony of Kevin Jones (school board member at the time the tax was enacted) who stated at trial held on February 2, 2001, that he was unaware of any other entity, other than Susquehanna Coal who had made payments under this tax.

Susquehanna Coal has not paid any of these taxed amounts and avers this is because they are contesting the validity of the tax.

Susquehanna Coal initiated suit in June of 1989 seeking a declaratory judgment that the tax was invalid. In November of 1989, the school district filed preliminary objections. This trial court granted and denied these in part by order dated June 18, 1990. The school district then answered the complaint on January 26, 1992 by filing an answer with new matter and a counterclaim for the collection of the tax. In March of 1992, Susquehanna Coal filed its answer to the school district's new matter and counterclaim with a subsequent affidavit verifying the facts contained in their answer. This court, after argument, granted the school district's summary judgment motion in part by order dated April 15, 1997. An opinion was entered by this court on September 18, 1997 which made reference to and cited *City of Harrisburg I, infra.* The opinion stated as its reasoning for this court's decision the holding in *City of Harrisburg I. City of Harrisburg I* was overturned by the Supreme Court of Pennsylvania's decision in *City of Harrisburg II, infra.* Therefore this court now can rule on the merits in light of the Supreme Court's decision.[2]

---

2. The memorandum opinion by Judge Flaherty filed June 4, 1999, included the following language:

"Therefore, because in this case the trial court did not include any Rule 341 language in its order that the order was an appealable 341 order, and because the counterclaim of the school district has not been disposed of in the record, the order and opinion of the trial court is vacated and the matter remanded back to the trial court to dispose of the matter on the merits in light of the Pennsylvania Supreme Court's

The *issues to be decided* are as follows: (1) Is the tax unreasonable and unnecessary? (2) Does the tax violate the State Uniformity Standards and Equal Protection Guarantees under the Pennsylvania Constitution (as an arbitrary form of classification) and the Federal Constitution? (a) If the answer is yes to both issues one and two, then the plaintiff is required to pay the basic tax amount stipulated by the parties ($46,421.13), and the next question is *what is the applicable interest rate* plaintiff must pay? (3) Is the tax's penalty provision valid? (a) If the answer to this issue is yes, then the next question is *what is the appropriate penalty?* (4) Should defendant be awarded attorney's fees? (5) Should plaintiff be awarded attorney's fees?

This court now addresses the *first issue,* (1) whether the tax is unreasonable and unnecessary? The pertinent statutes and case law are as follows:

Pennsylvania statute 53 P.S. §6902, Delegation of taxing powers and restrictions thereon, provides:

"The duly constituted authorities of the following political subdivisions, . . . school districts of the second class, school districts of the third class, and school districts of the fourth class . . . may, in their discretion, by ordinance or resolution, for general revenue purposes, levy, assess and collect or provide for the levying, assessment and collection of such taxes as they shall determine on persons, transactions, occupations, privileges,

decision in *City of Harrisburg II, infra,* and to specifically dispose of the school district's counterclaim." Memorandum opinion no. 1386 C.D. 1997, Flaherty, J., filed June 4, 1999, pp. 5-6.

subjects and personal property within the limits of such political subdivisions, and upon the transfer of real property, or of any interest in real property, situate within the political subdivision levying and assessing the tax . . . ." 53 P.S. §6902.

Pennsylvania statute 53 P.S. §6906, Appeals by taxpayers, explains the 30-day appeal period after the tax takes effect and the rights of the taxpayers to appeal. This statute is instructive as to the intended statutory limitations to be imposed on the courts by this law:

"It shall be the duty of the court to declare the ordinance and the tax imposed thereby to be valid *unless* it concludes that the ordinance is unlawful or finds that the *tax imposed is excessive or unreasonable;* but the *court shall not interfere* with the *reasonable discretion* of the legislative body in selecting *the subjects or fixing the rates of the tax.* The court may declare invalid any portion of the ordinance or of the tax imposed or may reduce the rates of the tax." LTEA, 53 P.S. §6906. (emphasis added)

The Commonwealth Court of Pennsylvania provides:

"In determining whether a tax is *unreasonable or excessive* under the LTEA, a court must look to that Act's underlying purposes and its reasonable effect. . . . [S]ection 6 does not leave a court at large to strike down any tax it considers 'too burdensome.' Rather it directs the court to *consider the entire Act, as well as other expressions of the law of this Commonwealth,* to ascertain whether they indicate that the tax imposed is so far divergent from the policies embodied therein as to be 'excessive or unreasonable.' " *Capitol Associates v. The*

*School District of the City of Harrisburg,* 684 A.2d 1119, 1124 (1996), quoting *Wm. Penn Parking Garage Inc. v. City of Pittsburgh,* 464 Pa. 168, 216, 346 A.2d 269, 293 (1975). (citation omitted) (emphasis added)

The case at bar can be distinguished from the decision in *Capitol Associates, supra,* where the Commonwealth Court of Pennsylvania held that a school district's imposed parking tax did *not* violate constitutional uniformity and equal protections requirements and was *not unreasonable or excessive* under the LTEA on the theory it fell disproportionately of the private operators. In *Capitol Associates,* "the tax burden imposed by the parking tax is borne equally by all nonexempt parking patrons, and nothing in the record supports the lower court's conclusion that the private operators disproportionately bear the burden of the tax." *Capitol Associates* at 1124. An imposed tax which falls squarely on the shoulders of *one taxpayer* must "disproportionately bear the burden of the tax." Therefore, this court concludes as to the issue of whether the tax is excessive or unreasonable, that the imposed tax by Mount Carmel Area School District is excessive and unreasonable.

Additionally, it should be noted that the language of the statute, 53 P.S. §6906, specifically states, "but the court shall not interfere with the reasonable discretion of the legislative body in selecting *the subjects* or fixing the rates *of the tax.*" The language specifically uses the wording, subjects of the tax. This indicates that the legislature did not intend for an imposed tax to fall squarely on the shoulders of one taxpayer, but that a tax is to be borne by more than one.

This court now addresses *issue two,* (2) whether the tax violates the State Uniformity Standards and Equal Protection Guarantees under the Pennsylvania Constitution (as an arbitrary form of classification) and the Federal Constitution.

The Pennsylvania State Constitution's Uniformity Clause provides:

"All taxes shall be uniform, *upon the same class of subjects,* within the territorial limits of the authority levying the tax, and shall be levied and collected under the general laws." Pa. Const. Art. VIII, §1. (emphasis added)

The Pennsylvania Supreme Court has held:

"[U]nder the *equal protection clause,* and under the *uniformity clause,* absolute equality and perfect uniformity in taxation are not required. In cases where the validity of a classification for tax purposes is challenged, the test is whether the classification is based upon some legitimate distinction between the classes that provides a non-arbitrary and 'reasonable and just' basis for the difference in treatment. Stated alternatively, *the focus of judicial review is* upon whether there can be discerned *'some concrete justification' for treating the relevant group of taxpayers as members of distinguishable classes subject to different tax burdens.* When there exists no legitimate distinction between the classes, and, thus, the tax scheme imposes substantially unequal tax burdens upon persons otherwise similarly situated, the tax is unconstitutional." *City of Harrisburg v. School District of City of Harrisburg (City of Harrisburg II),* 551 Pa. 295, 303, 710 A.2d 49, 53 (1998), quoting *Leonard v.*

*Thornburgh,* 507 Pa. 317, 489 A.2d 1349 (1985). (emphasis added)

"The taxpayer bears a heavy burden to demonstrate that the challenged tax classification is unreasonable." *Id.* citing *Pennsylvania Builders Ass'n v. Commonwealth, Department of Revenue,* 122 Pa. Commw. 493, 552 A.2d 730 (1989), *aff'd,* 524 Pa. 134, 569 A.2d 928 (1990).

This court will repeat its logic and reasoning stated in issue one. The intent of the Pennsylvania Constitution is clear, a tax is to be levied upon more than one entity or person, "[a]ll taxes shall be uniform, *upon the same class of subjects,* within the territorial limits of the authority levying the tax." This notion is bolstered by the court's language in *City of Harrisburg II,* "the focus of judicial review is upon whether there can be discerned 'some concrete justification' for treating *the relevant group of taxpayers* as members of distinguishable classes subject to different tax burdens." The case at bar *contains no relevant group of taxpayers but only one taxpayer,* and although it could be stated that the tax uniformly falls on the shoulders of one taxpayer, this does not appear to be within the intent of the above-stated case law and constitution. Where, as in the case at bar, there exists only one taxpayer under the tax, it must be concluded that "the tax scheme imposes [a] substantially unequal tax burden[] upon [the] person[] otherwise similarly situated [and] the tax is unconstitutional." *City of Harrisburg II, supra.* And, the taxpayer has met his heavy "burden in demonstrat[ing] that the challenged tax classification is unreasonable." *Id.*

Therefore, it is the conclusion of this court that the imposed tax by Mount Carmel Area School District vio-

lates the State Uniformity Standards and Equal Protection Guarantees under the Pennsylvania Constitution as an arbitrary form of classification,[3] and is thus invalid.

Issues *two a.* (2.a), *three* (3), and *three a.* (3.a) are not examined by this court. These issues address the applicable interest rate plaintiff must pay if the tax is valid, the validity of the penalty provision, and what the appropriate penalty should be. As this court has already determined, the tax imposed by the school district is invalid, thus these questions are moot.

This court now addresses and consolidates issues *four* (4) and *five* (5). These issues raise the same basic question: when should the court allow a party to recover attorney's fees?

In order to be awarded counsel fees under section 2503(9) [of the Judicial Code], the trial court needs to find that the action was commenced arbitrarily, vexatiously or in bad faith. Arbitrary conduct is that which is based on random or convenient selection or choice rather than based upon reason or nature. Litigation is vexatious when suit is filed without sufficient grounds either law or fact and if the suit served the sole purpose of causing annoyance. A lawsuit is commenced in bad faith when it is filed for purposes of fraud, dishonesty or corruption. *Township of Lower Merion v. QED Inc.,* 762 A.2d 779, 781-82 (Pa. Commw. 2000).

---

3. This court does not address whether the imposed tax is invalid under the Federal Constitution since it has already determined the tax to be invalid under the State Constitution.

A review of the record reveals there was a good faith dispute as to whether plaintiff was required to pay the imposed tax, neither the claim nor the counterclaim filed by defendant were commenced, "arbitrarily, vexatiously or in bad faith." *Township of Lower Merion, supra.* Therefore, neither party is entitled to attorney's fees from the other.

## ORDER

And now, May 24, 2001, for the logic and reasoning provided in the opinion filed this same day, this court hereby finds the tax imposed invalid as applied to plaintiff Susquehanna Coal Company.[1]

---

1. As the tax is invalid as applied to Susquehanna Coal Company, so too are the penalty provisions. This decision determines on the merits both the initial claim instituted in June 1989, and the counterclaim attached to the answer with new matter filed on January 26, 1992. This decision is entered in accordance with Pa.R.C.P. 1038.