# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re:  The Petition of John Carullo,   :
Jean Carullo, Joseph Henwood II and   :
Others to Contest Reapportionment by   :
Upper Providence Council Pursuant to   :   No. 1194 C.D. 2023
53 PA.C.S.906   :   Argued: November 6, 2024
  :
Appeal of:  Upper Providence   :
Township   :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE MATTHEW S. WOLF, Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**       **FILED:  December 30, 2024**

Upper Providence Township (Township) appeals an Order of the Court of Common Pleas of Delaware County (trial court) that granted a Petition to Contest Reapportionment by Upper Providence Council Pursuant to 53 Pa.C.S. § 906 (Reapportionment Petition) filed by John Carullo, Jean Carullo, Joseph Henwood II, and others (collectively, Petitioners or Appellees), set aside the Township's December 19, 2022 voting districts reapportionment, and remanded the matter to the Township to revise its voting districts map in accordance with the Upper Providence Home Rule Charter (Home Rule Charter).[1]  The Township also challenges the trial

---

[1] The Order is dated September 29, 2023, but exited on October 4, 2023, which is the controlling date.

court's earlier order, which denied the Township's Petition to Quash Petitioners' Contest to Reapportionment.[2]  Also before this Court for disposition is Appellees' Motion to Quash Appeal and Request for Attorney Fees (Motion to Quash).  For the following reasons, the Court dismisses the Township's appeal as moot, dismisses Appellees' Motion to Quash as moot, and denies Appellees' request for attorney fees.

## I.  BACKGROUND

On December 19, 2022, the Township enacted Ordinance No. 543 to adopt the 2022 Upper Providence Township Voting Districts Map (543 Voting Districts Map), which reapportioned Upper Providence's five voting districts in accordance with its total population as reported in the 2020 federal decennial census. (Reproduced Record (R.R.) at 3a-5a.)  The Township enacted Ordinance No. 543 pursuant to article IX, section 11 of the Pennsylvania Constitution,[3] Section 903 of the Municipal Reapportionment Act (MRA), 53 Pa.C.S. § 903,[4] and Section 12.05

---

[2] This Order is dated April 5, 2023, but exited on April 14, 2023.

[3] Article IX, section 11 of the Pennsylvania Constitution provides:

> Within the year following that in which the Federal decennial census is officially reported as required by Federal law, and at such other times as the governing body of any municipality shall deem necessary, each municipality having a governing body not entirely elected at large shall be reapportioned, by its governing body or as shall otherwise be provided by uniform law, into districts which shall be composed of compact and contiguous territory as nearly equal in population as practicable, for the purpose of describing the districts for those not elected at large.

PA. CONST. art. IX, § 11.

[4] Section 903 of the MRA provides:

> (a) General rule.--Within the year following that in which the Federal census, decennial or special, is officially and finally reported and at such other times as the governing body deems necessary, each entity having a governing body not entirely

**(Footnote continued on next page…)**

2

of the Home Rule Charter.[5] (*Id.* at 3a.) The Township based the 543 Voting Districts Map on Upper Providence's "population," as required by the Pennsylvania Constitution and MRA, instead of "electors," as required by the Home Rule Charter.

On January 18, 2023, pursuant to Section 906(a) of the MRA,[6] Appellees filed the Reapportionment Petition with the trial court to contest the 543 Voting Districts Map as being noncompliant with Section 903(b) of the MRA. (*Id.* at 9a-10a.) Appellees contended, contrary to Section 903(b) of the MRA, the 543 Voting Districts Map was "neither compact nor contiguous territories" nor "as nearly equal in population as practicable as officially and finally reported in the most recent Federal census." (*Id.*) Additionally, Appellees complained that the 543 Voting

---

elected at large shall be reapportioned into districts by its governing body. The governing body shall number the districts.

(b) Composition of districts.--Districts shall be composed of compact and contiguous territory as nearly equal in population as practicable as officially and finally reported in the most recent Federal census, decennial or special.

53 Pa.C.S. § 903.

[5] Section 12.05 of the Home Rule Charter provides:

The Township shall divide its electorate into five voting districts which shall be as even in number of electors as practicable. If general law mandates the establishment of an alternate number of districts, the number of election districts shall in all cases be an odd number.

UPPER PROVIDENCE TWP., DEL. CNTY., PA., HOME RULE CHARTER art. XII, § 12.05 (1996).

[6] Section 906(a) of the MRA states:

In the event there has been a reapportionment by the governing body pursuant to section 903(a) (relating to reapportionment by governing body) or 904 (relating to reapportionment by court upon petition), the reapportionment may be contested as not being in compliance with the criteria for reapportionment as set forth in section 903(b).

53 Pa.C.S. § 906(a).

Districts Map (1) "is unnecessarily disruptive to the [e]lectors," (2) "reduces the electoral choice of the electors by significantly altering the political party registration makeup of the voting districts to give the majority an unfair advantage over its rivals," (3) "leaves the 3[rd] District short by more than 100 residents (basically flipping the current population imbalance in the 4[th] to the 3[rd] District)," and (4) "will move thousands of residents to a new district." (*Id.* at 10a.) Finally, Appellees argued the Township could have enacted an alternative voting districts map proffered by Petitioner Steven Visek, which was a "substantially more practicable" and "significantly less disruptive" option than the 543 Voting Districts Map. (*Id.* at 10a, 25a.)

Thereafter, the Township filed a Petition to Quash Petitioners' Contest to Reapportionment because, the Township contended, Appellees did not properly verify the Reapportionment Petition. The trial court denied the Petition to Quash in its April 14, 2023 order. On May 10, 2023, the trial court held a hearing on the Reapportionment Petition. (*Id.* at 104a-212a.) Following the hearing, the trial court set aside the 543 Voting Districts Map and remanded the matter to the Township to revise the map in accordance with the Home Rule Charter. (Trial Court's Oct. 4, 2023 Order.) Specifically, the trial court ordered the Township to revise the 543 Voting Districts Map "in a manner that 'divide(s) its electorate into five voting districts which shall be as even in number of electors as practicable.'"[7] (*Id.* (citing UPPER PROVIDENCE TWP., DEL. CNTY., PA., HOME RULE CHARTER art. XII, § 12.05 (1996)).)

---

[7] The Home Rule Charter defines "electors" as "any person who shall possess all of the qualifications enabling him to register to vote." UPPER PROVIDENCE TWP., DEL. CNTY., PA., HOME RULE CHARTER, Definitions (1996).

4

The Township appealed the trial court's Order to this Court. In its Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a), Opinion, the trial court stated the Township's appeal should be quashed because it is interlocutory. (Trial Court's 1925(a) Opinion (1925 Op.) at 1.) Alternatively, the trial court stated its orders should be affirmed. (*Id.*) First, on the interlocutory issue, the trial court explained the October 4, 2023 Order "is not a final appealable order subject to review." (*Id.* at 5.) In support, the trial court stated this Court previously held in *In re Ross Township Election District Reapportionment*, 479 A.2d 681, 302 (Pa. Cmwlth. 1984),[8] that "an order overturning a reapportionment plan developed by a township board of commissioners and requiring establishment of a committee to develop a new plan was interlocutory and not immediately appealable." (1925 Op. at 5.) Thus, the trial court concluded the Township's appeal should be quashed. Second, assuming *arguendo* that the matter is properly before this Court on appeal, the trial court explained the 543 Voting Districts Map is "simply at odds with the Home Rule Charter's provision that 'the Township shall divide its electorate into five voting districts which shall be as even in number of electors as practicable.'" (*Id.* at 6 (quoting UPPER PROVIDENCE TWP., DEL. CNTY., PA., HOME RULE CHARTER art. XII, § 12.05 (1996)).) The trial court reasoned that when counted by elector, not total population, a variance of 15.5% exists between Districts 3 and 4 in the 543 Voting Districts Map, which violates the Home Rule Charter. (*Id.*) Additionally, the trial court held "[i]t is well established that a municipality which has adopted a home rule charter may exercise any power and perform any function not denied by

---

[8] In its 1925 Opinion, the trial court mistakenly cited *In re Ross Township Election District Reapportionment*, 489 A.2d 297 (Pa. Cmwlth. 1985), instead of *In re Ross Township Election District Reapportionment*, 479 A.2d 681 (Pa. Cmwlth. 1984), which is the opinion that discusses interlocutory appeals.

the Constitution of Pennsylvania, by statute, or by its home rule charter." (*Id.* (citing 53 Pa.C.S. § 2961).)[9]  Thus, at least implicitly, the trial court determined the Township should have based the 543 Voting Districts Map on "electors"—that is, the voting-eligible population—not the "population," as used in the Pennsylvania Constitution and MRA.

On January 11, 2024, after the Township appealed, the Township enacted Ordinance No. 550.  (Appellees' Motion to Quash, Ex. B.)  Ordinance No. 550 repealed Ordinance No. 543 and the 543 Voting Districts Map and replaced the map with a revised voting districts map based on "electors" (550 Voting Districts Map), which complied with the trial court's October 4, 2023 Order.  (*Id.*; *see also id.*, Ex. C.)  After the Township adopted Ordinance No. 550, Appellees filed a separate petition challenging the 550 Voting Districts Map.  (*Id.* ¶ 9, Ex. E.)  In response to Appellees' new petition, and taking into account the Township's appeal of its October 4, 2023 Order, the trial court held the petition in abeyance pending the resolution of this instant appeal.  (*Id.* ¶ 10, Ex. F.)

Soon after, Appellees filed the Motion to Quash with this Court, seeking to quash the Township's appeal because (1) the trial court's October 4, 2023 Order is not immediately appealable and (2) the appeal is rendered moot by the Township's repealing and replacing of Ordinance No. 543 and the 543 Voting Districts Map.

---

[9] Section 2961 of the Home Rule Charter and Optional Plans Law provides:

> A municipality which has adopted a home rule charter may exercise any powers and perform any function not denied by the Constitution of Pennsylvania, by statute or by its home rule charter.  All grants of municipal power to municipalities governed by a home rule charter under this subchapter, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the municipality.

53 Pa.C.S. § 2961.

(*Id.* ¶¶ 6-7, 11-18.) By Order dated April 12, 2024, upon review of Appellees' Motion to Quash, this Court directed Appellees to address the Motion to Quash along with the merits of this appeal in their principal briefs. After having received all briefing and having heard oral argument in this matter, this Court will now address the parties' arguments.

## II. DISCUSSION

On appeal, the Township and Appellees raise numerous arguments regarding Appellees' Motion to Quash and the underlying merits of this appeal. However, because the mootness issue is potentially dispositive, the Court will first address whether the Township's appeal is rendered moot by its enactment of Ordinance No. 550.

The Township argues its instant appeal is not rendered moot by its enactment of Ordinance No. 550, which repealed and replaced Ordinance No. 543, because Ordinance No. 550 never went into effect. (Township's Reply Brief (Br.) at 22.) The Township reasons that, although it attempted to resolve the underlying issue of this appeal by adopting the 550 Voting Districts Map in accordance with the trial court's October 4, 2023 Order, Appellees challenged Ordinance No. 550 and the trial court held it in abeyance pending disposition of this appeal. (*Id.*) Therefore, the Township asserts Ordinance No. 550 never went into effect and, thus, never repealed and replaced Ordinance No. 543. (*Id.*) Accordingly, the Township concludes this appeal is not moot because a decision by this Court will have the practical effect of determining whether the trial court erred in concluding the 543 Voting Districts Map must be revised based on electors instead of population and will "provide clear guidance to the parties and the [trial court] regarding the standards by which a subsequent redistricting must comply." (*Id.* at 23.)

7

In opposition, Appellees argue the Township rendered its appeal moot when it enacted Ordinance No. 550 because the Township repealed and replaced Ordinance No. 543, the subject matter of this appeal. (Appellees' Br. at 19.) Contrary to the Township, Appellees argue the trial court did not stay Ordinance No. 550 and, thus, Ordinance No. 550 went into effect and is now the law. (*Id.* at 20.) Accordingly, Appellees assert this appeal is moot because the Township repealed and replaced the 543 Voting Districts Map.

"It is a well-established principle of law that this Court will not decide moot questions." *In re Cain*, 590 A.2d 291, 292 (Pa. 1991). Thus, "an actual case or controversy must be extant at all stages of review" for this Court to render a decision on an issue. *Commonwealth v. Packer Township*, 60 A.3d 189, 192 (Pa. Cmwlth. 2012) (quoting *Pap's A.M. v. City of Erie*, 812 A.2d 591, 600 (Pa. 2002)). As this Court has explained,

> [t]he cases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten under way—changes in the facts or in the law—which allegedly deprive the litigant of the necessary stake in the outcome.

*Id.* (quoting *In re Gross*, 382 A.2d 116, 119 (Pa. 1978)). Accordingly, an intervening change in facts or law, including when a challenged ordinance is repealed and replaced by a newly enacted ordinance, may render an issue moot. *See Landlord Serv. Bureau, Inc. v. City of Pittsburgh*, 317 A.3d 986, 986-87 (Pa. 2024) (holding an issue moot because the City of Pittsburgh repealed and replaced the challenged ordinance with a newly enacted ordinance); *In re Gross*, 382 A.2d at 120 (recognizing that an intervening change in an ordinance renders an appeal challenging the validity of the ordinance moot); *Salisbury Township v. Sun Oil Co.*,

179 A.2d 195, 197 (Pa. 1962) (dismissing an appeal as moot because the challenged ordinance expired); *Kasper v. Southampton Township* (Pa. Cmwlth., No. 1598 C.D. 2007, filed Apr. 30, 2008), slip op. at 6 ("An issue becomes moot due to an intervening change in facts or law, such as when an ordinance being challenged is repealed and a new ordinance is enacted.").[10]

Here, the Court is constrained to conclude the Township's appeal is rendered moot. After the Township appealed the trial court's October 4, 2023 Order to this Court, it enacted Ordinance No. 550 to repeal and replace Ordinance No. 543. In so doing, the Township repealed the 543 Voting Districts Map at issue here and replaced it with the 550 Voting Districts Map, which the Township created in an attempt to comply with the trial court's October 4, 2023 Order. Consequently, the Township eliminated the sole subject of this appeal. Although the trial court issued an order in the matter challenging Ordinance No. 550, importantly, the order did not enjoin Ordinance No. 550. Instead, the order states that "[Appellees'] **petition** shall be held in abeyance pending the disposition of the appeal [in the instant action before this Court]." (Trial Court's March 13, 2024 Order (emphasis added).) Because the trial court stayed Appellees' petition rather than Ordinance No. 550, per its terms, Ordinance No. 550 took effect five business days after its passage on January 11, 2024. Accordingly, Ordinance No. 550 and the 550 Voting Districts Map remain in effect, thus rendering this appeal involving Ordinance No. 543 and the 543 Voting Districts Map moot. *See Landlord Serv. Bureau, Inc.*, 317 A.3d at 986-87; *In re Gross*, 382 A.2d at 120; *Salisbury Township*, 179 A.2d at 197; *Kasper*, slip op. at 6.

---

[10] Unreported panel decisions of this Court may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

Even if, *arguendo*, the trial court finds in favor of Appellees in their challenge of Ordinance No. 550 and invalidates the 550 Voting Districts Map, Ordinance No. 543 and the 543 Voting Districts Map would not be reinstated because Ordinance No. 550 contains a severability provision. Ordinance No. 550's severability provision would save the clause repealing Ordinance No. 543 and the 543 Voting Districts Map despite the hypothetical invalidation of the clause adopting the 550 Voting Districts Map. Therefore, this instant appeal involving the 543 Voting Districts Map is moot, and this Court will not issue an advisory opinion on the underlying merits of the appeal. *See Buehl v. Beard*, 54 A.3d 412, 419 (Pa. Cmwlth. 2012) ("Absent an 'actual controversy,' any opinion rendered would be advisory, and we do not issue advisory opinions.").[11]

## III. CONCLUSION

For the foregoing reasons, the Court dismisses the Township's appeal and Appellees' Motion to Quash as moot. Further, the Court denies Appellees' request for attorney fees because we do not believe the Township acted arbitrarily, vexatiously, or in bad faith in pursuing their appeal. *See Township of Lower Merion v. QED, Inc.*, 762 A.2d 779, 781-85 (Pa. Cmwlth. 2000).

_____

**RENÉE COHN JUBELIRER,** President Judge

Judge Fizzano Cannon did not participate in this decision.

_____

[11] The Court cautions that a Home Rule Charter provision may not be interpreted in a manner that is inconsistent with the Pennsylvania Constitution or the MRA.

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: The Petition of John Carullo, :
Jean Carullo, Joseph Henwood II and :
Others to Contest Reapportionment by :
Upper Providence Council Pursuant to : No. 1194 C.D. 2023
53 PA.C.S.906 :
:
Appeal of: Upper Providence :
Township :

# **O R D E R**

**NOW**, December 30, 2024, Upper Providence Township Council's appeal in the above-captioned matter is **DISMISSED** as moot, and John Carullo, Jean Carullo, Joseph Henwood II, and others' Motion to Quash Appeal and Request for Attorney Fees is **DISMISSED** as moot and the request for attorney fees contained within is **DENIED**.

_____
**RENÉE COHN JUBELIRER,** President Judge