511 A.2d 1321

**Louis F. GILBERTI, successor to Highlands and Gilberti, Architects, Appellee,**

v.

**The CITY OF PITTSBURGH, a Municipal Corporation, Appellant.**

Supreme Court of Pennsylvania.

Argued March 6, 1986.

Decided June 23, 1986.

Dante R. Pellegrini, Ronald H. Pferdehirt, Office of the City Solicitor, Pittsburgh, for appellant.

Mark A. Griffith, Davis & Reilly, P.C., Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Commonwealth Court which held that the City of Pittsburgh (hereinafter City) is without power, under Section 2 of The Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, as amended, 53 P.S. § 6902, to impose its Business Privilege Tax (hereinafter Tax), measured by gross receipts, upon certain gross receipts of an architectural firm owned by the appellee, Louis F. Gilberti. *Gilberti v. City of Pittsburgh,* 89 Pa.Commw.Ct. 541, 493 A.2d 137 (1985). In determining liability for the Tax, Gilberti excluded from his calculation of gross receipts such income as he maintained was derived from on-site supervision of a construction project outside the City limits. The City deemed that exclusion to be improper, and a deficiency assessment was made in the amount of $2,103.55, plus penalty and interest, for the tax

years 1977 through 1980. An appeal was taken to the Court of Common Pleas, and the deficiency assessment was affirmed. Commonwealth Court reversed, relying upon *Borough of Brookhaven v. Century 21*, 57 Pa.Commw.Ct. 211, 425 A.2d 466 (1981) (Tax Enabling Act strictly construed to prohibit borough from imposing business privilege tax on gross receipts from services performed outside the borough), and the case was remanded for recomputation of the Tax owed based only upon gross receipts attributable to activities taking place within the City. The issue to be addressed in the instant appeal, therefore, is whether the City can impose its Tax upon the entire gross receipts of a taxpayer, including the portion of gross receipts derived from services rendered outside the City, when the taxpayer's sole business office is located within the City.

Section 243.02 of the Pittsburgh Code (hereinafter Code) establishes the Tax by providing that "[e]very person engaging in any business in the City shall pay an annual tax at the rate of six mills on each dollar of volume of the gross annual receipts thereof." In defining the types of "business" subject to the Tax, Section 243.01(a)(1) defines "business" as:

> Carrying on or exercising whether for gain or profit or otherwise within the City any trade, business, including but not limited to financial business as herein defined, profession, vocation, service, construction, communication or commercial activity, or *rendering services from or attributable to a bona fide City office or place of business.*

(Emphasis added.) The Code differentiates income attributable to offices maintained outside the City limits, for Section 243.01(e)(3) provides the following exclusion:

> Receipts or that portion thereof attributable to interstate or foreign commerce or to a *bona fide office or place of business regularly maintained by the taxpayer, outside the City limits,* and not for the purpose of evading tax payment, and those receipts which the City is prohibited from taxing by law. Such receipts shall be segregated so

that only that part of the receipts which is properly attributable and allocable to the doing of business in the City shall be taxed hereunder.

(Emphasis added.) Since Gilberti did not maintain an office outside the City limits, the taxing authority deemed that all proceeds of his architectural firm were, in the language of Section 243.01(a)(1), supra., "render[ed] ... from or attributable to a bona fide City office or place of business.".

The extent of the City's authority to enact a tax such as the present one is governed by The Local Tax Enabling Act [1], supra., for municipalities have the power to enact only such tax ordinances as are authorized by the legislature. *Allentown School District Mercantile Tax Case*, 370 Pa. 161, 171, 87 A.2d 480, 484 (1952). In *F.J. Busse Co. v. City of Pittsburgh*, 443 Pa. 349, 279 A.2d 14 (1971), this Court upheld the power of the City, under the Enabling Act, to impose a business privilege tax, but the issue of whether such a tax could be applied to receipts generated by services performed outside the City was not presented. The Enabling Act provides that certain political subdivisions, including the City, are empowered to:

> ... levy, assess and collect or provide for the levying, assessment and collection of such taxes as they shall determine on persons, transactions, occupations, privileges, subjects and personal property *within the limits of such political subdivisions....*

53 P.S. § 6902 (emphasis added). Gilberti asserts that the City, by taxing receipts from services rendered outside of its boundaries, has exceeded the powers conferred upon it by the Local Tax Enabling Act, insofar as the Act restricts the City's taxing authority to "transactions" and "privileges" that are "within the limits" of the political subdivision.

■ For any given business, transactions occurring outside the City frequently have a substantial relationship to

---

**1.** The Local Tax Enabling Act is a substantial reenactment of the so-called "Tax Anything Act" of June 25, 1947, P.L. 1145. See *F.J. Busse Co. v. City of Pittsburgh*, 443 Pa. 349, 353, 279 A.2d 14, 16 (1971).

transactions occurring within the City. Out-of-City transactions may in numerous ways be benefited by the fact that the taxpayer maintains an office within the City, but the fact remains that out-of-City transactions are not transactions within the City, and the Enabling Act has conferred power upon the City to tax only transactions "within the limits" of the City. Although "not every ingredient of a transaction must take place within the taxing district," nevertheless, "[i]t is ... necessary that the *phase upon which the tax is based* occur in the taxing jurisdiction...." *Glendale Heights Ownership Association v. Glenolden School District,* 393 Pa. 485, 493, 143 A.2d 386, 389 (1958) (emphasis added) (tax on actual or constructive change of physical possession of real estate in the jurisdiction, applicable where the change of possession, i.e., the taxable event, takes place at the site of the real estate involved); *Standard Brands, Inc. v. City of Pittsburgh,* 403 Pa. 590, 170 A.2d 568 (1961) (city mercantile license tax on gross sales receipts held applicable to sales to customers outside city limits where sales were consummated at an office in the city); *Rath Packing Co. v. City of Pittsburgh,* 404 Pa. 36, 171 A.2d 42 (1961) (city mercantile license tax on gross sales receipts held applicable to sales outside city limits where vendor maintained a district sales office within the city to effect the sales orders, and, thus, tax was deemed to be a tax on effecting sales orders within the city). See also *Keystone Metal Co. v. City of Pittsburgh,* 374 Pa. 323, 97 A.2d 797 (1953), cert. denied, 346 U.S. 887, 74 S.Ct. 139, 98 L.Ed. 391 (1953); *General Foods Corp. v. City of Pittsburgh,* 383 Pa. 244, 118 A.2d 572 (1955) (sales to customers outside the city deemed effected within the city for purposes of mercantile license tax).

■ In all of the foregoing cases where sales to customers outside the city were deemed to have been sales consummated within the city, taxable under powers conferred upon the city by enabling legislation comparable to that found in the present case, there were present substantial necessary or supportive sales activities within the city to

permit the conclusion that the sales were in fact effected within the city. Similarly, in the present case, on-site construction supervision performed at a location outside the City might arguably be regarded as a transaction effected from within the City. Such an approach, however, would accord an untenably broad interpretation to what constitutes a transaction "within the limits" of the City, since work that is performed exclusively at such sites is by definition not performed at the taxpayer's office in the City. Further, it is established that statutes authorizing political subdivisions to levy taxes are to be strictly construed insofar as the scope of the power granted, and any doubt concerning the scope of the taxing power, to wit in this case doubt as to whether the taxpayer's on-site activities could be taxed as transactions in the City, must be resolved in favor of the taxpayer and against the political subdivision. *Fischer v. Pittsburgh*, 383 Pa. 138, 141–142, 118 A.2d 157, 158–59 (1955). See also *Golden Triangle Broadcasting, Inc. v. City of Pittsburgh*, 483 Pa. 525, 534, 397 A.2d 1147, 1151 (1979); *Mastrangelo v. Buckley*, 433 Pa. 352, 363, 250 A.2d 447, 453 (1969).

Having determined that the tax levy in question cannot be sustained as an exercise of the City's power to tax "transactions," we turn to the question of whether it can be upheld as an exercise of the City's authority to tax "privileges." The "privilege" of engaging in business within the City, which the Enabling Act establishes as a subject that may be taxed, see *F.J. Busse Co.*, supra., must be regarded as being separate and apart from "transactions" within the City that may be taxed. To regard it otherwise would be to ignore the significance of the two subjects for taxation having been separately stated in the Enabling Act. This Court has never directly addressed the question, however, of whether a tax upon the "privilege" of doing business in a political subdivision can be levied upon gross receipts from transactions, in this case services performed, outside the political subdivision. In *O.H. Martin Co. v. Sharpsburg Borough*, 376 Pa. 242, 243, 102 A.2d 125, 125 (1954), a

borough had imposed, by ordinance, a business privilege tax on the gross receipts derived from all services rendered by all " 'persons offering any service ... to the general public ... *from places ... within the Borough.* ' " (Emphasis in original). A taxpayer challenged the ordinance on the ground that, inter alia, the ordinance unlawfully attempted to tax receipts from interstate commerce. This Court agreed and held that only receipts from intrastate commerce, as opposed to interstate commerce, could be subject to the tax. The taxpayer, however, had not challenged the authority of the Borough to tax receipts from services rendered outside the limits of the Borough (but within the Commonwealth), and that issue, therefore, was not before the Court.

Some guidance may be obtained by reference to *City Stores Co. v. City of Philadelphia,* 376 Pa. 482, 103 A.2d 664 (1954), and *Philadelphia Appeal,* 383 Pa. 428, 119 A.2d 205 (1956). In the *City Stores* case, an ordinance had been enacted under the authority of the Sterling Act, and the ordinance imposed a tax upon "[e]very person who makes, executes, issues, or delivers any document ...," the amount of the tax being determined by the value represented by the document. The Sterling Act, Act of August 5, 1932, P.L. 45, as amended, 53 P.S. § 15971 et seq., formerly 53 P.S. § 4613 et seq., is the equivalent of the Local Tax Enabling Act for cities of the first class. The Sterling Act authorized the city to levy taxes "on persons, transactions, occupations, privileges, subjects and personal property, *within the limits* of such city." (Emphasis added.) In *City Stores,* settlement of a real estate sale was held outside the city, and this Court held that every taxable event involving documents took place outside the taxing district. The ordinance in *Philadelphia Appeal,* supra., employed almost exactly the same language as that found in the ordinance in the *City Stores* case. In *Philadelphia Appeal,* it was similarly held that, since settlement of a real estate sale took place outside the taxing district, every possible taxable event was also performed outside the taxing district. The

city had argued that the ordinance imposed a tax on the "privilege" of transferring real estate, and that the tax was therefore applicable without regard to whether settlement documents were made, issued, or delivered inside the city limits. This Court concluded that, even if this inference could be drawn from the language of the ordinance, the *exercise* of the privilege was performed outside the taxing district, and that it was the *exercise* of the privilege that the ordinance must be understood as subjecting to a tax. The Court held that, because the Sterling Act permitted taxes to be imposed only on "privileges ... within the limits of such city," only such exercises of the privilege of transferring real property as in fact occurred within the city limits could be subject to the tax in question. Indeed, the Court noted,

> [E]ven if the ordinance ... was intended to impose a tax on the transfer, outside the City of Philadelphia, of property within the City, such intention would have been futile, as held in the *City Stores* Company case, because of the limitations on the City's authority in that respect contained in the Sterling Act.

In the instant case, the limitations on a political subdivision's power to tax privileges, under the Enabling Act, are identical to the limitations found in the Sterling Act, in that only privileges "within the limits" of the political subdivision may be taxed. Thus, in accordance with the *City Stores* and *Philadelphia Appeal* decisions, where the City imposes a tax upon a privilege, the tax cannot be levied directly upon exercises of the privilege that occur outside of the taxing district. The privilege of doing business in the City, like the privilege of owning and transferring property involved in the *City Stores* and *Philadelphia Appeal* cases, can be taxed only to the extent that the exercise of the privilege occurs within the City.

Maintaining a business office in the City is an exercise of a privilege "within the limits" of the taxing district, and, thus, a tax can thereupon be levied. In the present case, the City's Tax, labeled a tax on the "privilege" of doing business in the City, operates in such a manner as to,

in effect, tax revenues from certain transactions that occur wholly outside the City. This is so because the amount of the Tax is determined by the assessment of a millage rate against the gross receipts of the business, and such receipts include income derived from services performed at locations outside the City limits. Nevertheless, the tax remains one that is levied only upon a privilege exercised within the City, to wit maintenance of a business office, and the fact that the amount of tax is dependent upon the taxpayer's gross receipts, including receipts from services performed outside the City, does not undermine the legitimacy of the tax.

In support of this conclusion it is to be emphasized that the plain language of the Enabling Act provides for taxes to be levied upon privileges within the City. In enacting such a provision, the legislature surely recognized that the exercise by a taxpayer of the privilege of doing business within a taxing jurisdiction constitutes far more than the sum of individual transactions and activities which are consummated or performed within the territorial limits of the taxing entity. Indeed, having a place of business within the City enables the taxpayer to have a base of operations from which to manage, direct, and control business activities occurring both inside and outside the City limits. Further, the in-City office provides a place from which to solicit business, accept communications, conduct meetings, store supplies, and perform office work. All of these activities are, in the usual course, necessary to any business operation. This is so irrespective of whether the business performs services at job sites outside of the City.

In recognition of this, we believe the legislature has provided for the City to collect a tax upon the privilege of having a place of business in the City, and the measure of that tax is not to be so limited as to ignore the contribution to out-of-City activities provided by maintaining a base of operations within the City. The decision of Commonwealth Court to the contrary, therefore, must be reversed.

■ We note that the City has argued that, if the scope of the Tax were limited so as to exclude revenues from services performed outside the City, the City's collection efforts would be substantially hindered, that it would be difficult to separate taxable revenues from non-taxable ones, and that City revenues would be substantially decreased. Such consequences, whether or not they in fact would occur, have not been regarded by this Court as relevant to the legal issue presented, i.e., the extent of the tax power conferred by the Enabling Act. The City may adopt authorized taxes which it regards itself as capable of enforcing, but the fact that it might not be capable of enforcing to its satisfaction any given tax is not an argument to be given weight in the consideration of whether the City has the power to adopt such a tax in the first instance.

Order reversed.