**THE SCHOOL DISTRICT OF THE CITY OF SCRANTON and The City of Scranton, Appellants**

v.

**R.V. VALVANO CONSTRUCTION COMPANY, INC.**

Commonwealth Court of Pennsylvania.

Argued Sept. 7, 2004.

Decided Nov. 5, 2004.

Reargument Denied Jan. 5, 2005.

David J. Rinaldi, Scranton, for appellants.

Charles A. Shaffer, Kingston, for appellee.

BEFORE: COLINS, President Judge, McGINLEY, Judge, McCLOSKEY, Senior Judge.

OPINION BY Judge McGINLEY.

The School District of the City of Scranton (School District) and The City of Scranton (City) (collectively, Scranton) appeal an order of the Court of Common Pleas of Lackawanna County (common pleas court) that granted R.V. Valvano Construction Company, Inc.'s (Valvano) motion for summary judgment and held as a matter of law that Scranton may not collect a "business privilege tax" from Valvano.

The following facts are undisputed: Valvano operates a construction business. Between 1990 and 2000, Valvano performed a substantial amount of construction and renovation work in the City of Scranton. Valvano maintains its sole permanent place of business and office at 347 Main Street, Dickson City Borough, Pennsylvania. It does not have a business office or base of operations within the City of Scranton. It does not manage, direct or control business activities from a base of operations within the City of Scranton, nor does it solicit business, accept communications, conduct meetings, store supplies or provide office work from a base of operations located in the City of Scranton. Valvano filed Business Privilege and/or Mercantile Tax Returns with Dickson City Borough for the years 1990–2000 (except 1996). In those returns, Valvano paid "business privilege taxes" to the Dickson City Borough based on its "total gross volume of business."

On August 6, 2001, Scranton filed a two-count Complaint against Valvano seeking to collect delinquent "Business Privilege and/or Mercantile Taxes" which were levied upon Valvano by the City and School District from 1989 to the present (2001), plus interest and penalties. Valvano filed preliminary objections and a motion for a more specific complaint, alleging that Scranton had not adequately set forth the amount of tax sought to be assessed and failed to specify whether the tax at issue was a business privilege tax or a mercan-

tile tax. On February 12, 2002, Scranton filed a two-count amended complaint which clarified that the School District sought unpaid "business privilege taxes" plus interest and penalties in the amount of $72,737.61, while the City of Scranton sought unpaid "business privilege taxes" plus interest and penalties in the amount of $19,270.18.

During discovery, Scranton produced a copy of its "Business Privilege Tax Ordinance" (the Scranton Ordinance) which was passed by the Council of the City of Scranton on January 7, 1987, and annual updates of the School District reenacting the Scranton Ordinance and setting the millage for each subsequent year.[1] The Scranton Ordinance states that its purpose is:

> TO PROVIDE FOR THE GENERAL REVENUE BY IMPOSING A TAX AT THE RATE OF 2 MILLS UPON THE PRIVILEGE OF OPERATING OR CONDUCTING BUSINESS IN THE CITY OF SCRANTON AS MEASURED BY THE GROSS RECEIPTS THEREFROM ...

Pursuant to Section 3 of the Scranton Ordinance, "every person engaging in any business in the City of Scranton shall pay an annual tax at the rate of 2 Mills on each dollar of volume of the gross annual receipts thereof." Ordinance § 3.

Section 2(f)(5) of the Scranton Ordinance provides that gross receipts shall exclude "[r]eceipts for that portion thereof attributable to ... an office or place of business regularly maintained by the taxpayer, outside the limits of the City of Scranton, and not for the purpose of evading payment of this tax and those receipts which the City is prohibited from taxing by law. Such receipts shall be segregated as set forth in Section 4(c) of this Ordinance."

Ordinance § 2(f)(5). Section 4(c) provides that "the Tax Collector shall establish rules and regulations and methods of allocation and evaluation so that only that part of such receipt which is attributable and allocable to the doing of business in the City of Scranton shall be taxed hereunder." Ordinance § 4(c).

On July 29, 2002, Valvano filed a motion for summary judgment asserting that as a matter of law it was not liable for payment of a "business privilege tax" because it did not maintain an actual physical, permanent base of operations in Scranton, and that it at all times conducted business from its permanent base of operations in Dickson City.

Scranton also filed a motion for summary judgment asserting that it was entitled to judgment as a matter of law because "[t]he business privilege tax may be imposed on taxpayers who [do business in Scranton but] do not have a permanent place of business in the City of Scranton." Brief of the City of Scranton and the School District of the City of Scranton in Support of its Motion for Summary Judgment, September 6, 2002, at 4.

On December 24, 2002, the common pleas court entered summary judgment in favor of Valvano. The court concluded that Valvano was not liable to pay business privilege tax to Scranton since it did not maintain a business office or base of operations there. Citing *Gilberti v. City of Pittsburgh*, 511 Pa. 100, 511 A.2d 1321 (1986) and *Township of Lower Merion v. QED, Inc.*, 738 A.2d 1066 (Pa.Cmwlth.), *appeal denied*, 565 Pa. 680, 775 A.2d 811 (2001), the common pleas court noted that a tax on the privilege of engaging in business within a municipality is a separate subject of taxation, distinct from the ability to tax individual business transactions.

---

1. Scranton Ordinance No. 147–1986.

Common Pleas Court Opinion, December 24, 2002, at 6. The common pleas court held that Scranton's attempt to collect a business privilege tax from an out-of-city business that performed work in Scranton "commingle[d] a business privilege tax and a transaction tax into a single levy and ignore[d] the conceptual and practical distinction between those two items of taxation." *Id.* at 7. Noting, "more importantly" that Valvano was obligated to pay a business privilege tax to the City of Dickson for all intrastate construction revenues, the common pleas court held that the assessment of an additional tax by Scranton required Valvano to pay the same tax twice and resulted in double taxation, which is prohibited by Pennsylvania law. *Id.* at 11. Finally, the common pleas court, relying on *Gilberti* and *QED*, concluded that Scranton's "business tax regulations" which provide that "[a] person who engages in a taxable activity in Scranton is subject to this tax whether ... he has a permanent place of business in Scranton" were void because they contravened Scranton's taxing authority under the Local Tax Enabling Act, (the "Enabling Act").[2]

In its appeal from the December 24, 2002, order, Scranton asserted that the common pleas court erred when it concluded that the City and School District failed to validly enact a "transaction tax" under the Enabling Act.[3] Scranton argued that "a

transaction tax was enacted by the City through ordinance and [adopted] by the School District by resolution" and "the mere fact that the transaction tax was enacted as part of the Business Privilege Tax Regulations should not matter." Revised Brief for Appellants Pursuant to PA. R.A.P. 2171, April 17, 2003, at 13–14.

Because the certified record did not include the School District's resolution which, according to Scranton, enacted the transaction tax, this Court remanded the matter back to the common pleas court with instructions to supplement the record and for the common pleas court to issue a new determination, if necessary. *The School District of the City of Scranton and The City of Scranton v. R.V. Valvano Construction Company, Inc.*, 836 A.2d 1090, Pa. Cmwlth, No. 236 C.D.2003, filed November 18, 2003.

The common pleas court directed the parties to file the additional materials and any supplemental memoranda of law they wished to have considered by the court. Common Pleas Court Order, November 19, 2003, at 1–2. Valvano submitted a second Affidavit of Rocco V. Valvano which established that Valvano paid "business privilege taxes" to Dickson City for the years 1990 through 2000, and that the tax was based on Valvano's gross volume of business.[4]

---

2. See generally Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. § 6902. The Enabling Act, 53 P.S. § 6902, provides that certain political subdivisions, including the City, are empowered to "levy, assess and collect or provide for the levying, assessment and collection of such taxes as they shall determine on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions ..."

3. Scranton also argued in its first appeal that: (1) the common pleas court erred when it found Valvano was responsible to pay a busi-

ness privilege tax to Dickson City for all intrastate construction revenues since no such evidence was contained in the record; (2) the common pleas court failed to consider the specific resolution enacting the business privilege tax by the School District; and (3) the common pleas court misapplied the facts to the Enabling Act.

4. Valvano also submitted the Affidavit of Berkheimer Associates, the tax administrator for Dickson City, which showed Valvano paid "business privilege taxes" to Dickson City from 1995 to 2003 (except 1996).

On March 9, 2004, the common pleas court again entered summary judgment in favor of Valvano and against Scranton:

We have carefully considered the parties' supplemental submissions and remain convinced that the School District and City cannot collect a BPT from a business which does not maintain a base of operations of business office within the City of Scranton. The School District resolutions do not vest the School District or City with the authority to impose the BPT on businesses which are not commercially domiciled in Scranton. We are mindful that any doubts concerning the construction of a taxing ordinance must be construed in favor of the taxpayer and against the government, *J & K Trash Removal[v. City of Chester]*, 842 A.2d 983[989], 2003 WL 23190182 at *5,[(Pa.Cmwlth.2004)] and believe that this issue was correctly decided in conformity with appellate precedent when we originally held:

In sum, Valvano is obligated to pay business privilege taxes on its gross receipts to Dickson City since it maintains its base of operations and business office in that Borough. Pursuant to *Gilberti,* the business privilege taxes payable by Valvano to Dickson City may include gross receipts from construction work performed by Valvano within the City of Scranton. However, based upon *QED,* Valvano is not liable to pay duplicate business privilege tax to the Scranton taxing authorities since Valvano does not have a permanent base of operations there and Scranton cannot use a business privilege tax to tax individual transactions by an out-of-city contractor.

Common Pleas Court Opinion, March 9, 2004, at 19.

On appeal,[5] Scranton raises seven issues: (1) Whether the common pleas court's application of the facts of record to the requirements of the Local Tax Enabling Act was in error? (2) Whether the common pleas court erred as a matter of law in concluding that Scranton had not validly enacted a transaction tax under the Local Tax Enabling Act? (3) Whether the precedent relied on by the common pleas court as basis for its Order has been modified by the Pennsylvania Supreme Court in *Philadelphia Eagles v. City of Philadelphia,* 573 Pa. 189, 823 A.2d 108 (2003)? (4) Whether the common pleas court acting *sua sponte* granted summary judgment without a pending summary judgment motion before it in violation of Pa. R. Civ. P. No. 1035.1? (5) Whether the common pleas court's entry of summary judgment in favor of Valvano violated Pa. R. Civ. P. No. 1035.4? (6) Whether the common pleas court abused its discretion or erred as a matter of law by failing to rule on Scranton's Motion for Reconsideration of its November 18, 2003, order prior to entering the order subject to this appeal? (7) Whether the common pleas court, acting *sua sponte,* denied Scranton due process by ordering the parties to file documents to supplement the record, which could not be contested through normal discovery?[6]

---

5. Our review of a common pleas court's grant of summary judgment is limited to determining whether the trial court made an error of law or abused its discretion. *Salerno v. La-Barr,* 159 Pa.Cmwlth. 99, 632 A.2d 1002 (1993), *petition for allowance of appeal denied,* 537 Pa. 655, 644 A.2d 740 (1994). Summary judgment should only be granted in a clear case and the moving party bears the burden of demonstrating that no material issue of fact remains. The record must be reviewed in the light most favorable to the non-moving party. *Id.*

6. This Court has foregone the order of the issues raised by Scranton.

This Court will dispose of the first and second issues collectively. First, Scranton claims that the common pleas court erred when it relied on *Gilberti* and defined a business privilege tax as a tax which may be levied on the privilege of maintaining a business office or base of operations within a particular taxing district. Scranton contends that *Gilberti* should be overruled and a business privilege tax should be defined, instead, as a tax on the privilege of generating gross receipts, which, it is argued, what the General Assembly intended when it enacted the Enabling Act and exactly what the Ordinance provides ("every person engaging in any business in the City of Scranton shall pay an annual tax at the rate of 2 Mills on each dollar of volume of the gross annual receipts thereof"). Scranton claims its business privilege tax embraces both, the gross receipts of a city-based business, *and* the receipts of an out-of-city business transacting business in Scranton. Scranton maintains that Valvano is subject to Scranton's business privilege tax since Valvano was afforded the "privilege" (by virtue of the various construction projects in Scranton) of generating gross receipts, even though it does not have a base of operations in Scranton.

Alternatively, Scranton contends that the common pleas court erred when it concluded that it did not enact a valid transaction tax under the Enabling Act.

Recently, this Court in *V.L. Rendina v. City of Harrisburg*, Pa.Cmwlth., 859 A.2d 888 (2004), recognized that a tax may not be characterized as a "privilege tax" where the crux of the tax is upon an isolated, underlying transaction, even though the taxing body has called it a privilege tax. It is the measure of the tax which is determinative of whether the tax is considered to be a transaction tax, as opposed to a business privilege tax.

Our Supreme Court noted in *Airpark International v. Interboro School District*, 558 Pa. 1, 735 A.2d 646 (1999):

> The difference ... between a business privilege tax and a transaction tax is not just the stated subject of the tax, but how the tax is measured. A business privilege tax is a tax imposed on all of the gross receipts from all of the businesses' activities anywhere, so long as the base of operations within the political subdivision contributes to those activities because the privilege of doing business is 'far more than the sum of transactions ... performed within the territorial limits of the taxing entity.' ... A transaction tax, however, is imposed on the receipts from the designated transactions that are actually performed within the taxing entity, because its subject is only the transaction and not the privilege of engaging in a business that allows the transaction to be consummated.

*Airpark International*, 558 Pa. at 4, 735 A.2d at 647.

In this case, Scranton's ordinance, which is entitled a "business privilege tax," imposes a tax on the volume of the gross annual receipts received by a person engaged in any business in the City of Scranton. Scranton's ordinance does not differentiate between gross annual receipts of a domiciled business (which has been afforded the privilege of conducting business from within the city) and the receipts received from designated transactions that are actually performed within the City by an out-of-city business. Simply, the question is whether Scranton's ordinance imposes a valid tax on the gross receipts from the isolated transactions of an out-of-city business such as Valvano.[7]

7. Scranton alleges that its transaction tax was

included in "the amendments to the Business

■ By couching Valvano's activities in Scranton in terms of a "privilege," Scranton has indeed "commingled" the definite distinction between a business privilege tax and a transaction tax. In this case, the Ordinance clearly and unambiguously spells out both the subject and the measure of the tax as a business privilege tax on the annual gross receipts from any person engaging in any business in Scranton. There is no mention of "transactions" or any indication that Scranton intended to tax individual, isolated transactions performed in Scranton by out-of City businesses. To the contrary, the Ordinance taxes the "privilege" of engaging in any business within the City, and imposes the tax on the gross annual receipts thereof.

In *QED*, the Township of Merion enacted a business privilege tax which was virtually identical to Scranton's business privilege tax, with the exception of the rate of tax imposed:

> **Every person engaging in a business, trade, occupation or profession in the Township shall pay an annual business privilege tax** for the year beginning January 1, 1981 and for each tax year thereafter, at the rate of one and five-tenths mills (1.5) **on such person's gross receipts.** (emphasis added).

*QED*, 738 A.2d at 1067.

The Township of Merion, sought to tax the gross receipts of each individual transaction that occurred within its district. Like Scranton, the Township of Merion interpreted its code and regulations so as to impose the business privilege tax upon contractors for work performed within the Township, regardless of the location of the contractor's offices. QED countered that the individual transactions that occurred within the Township of Merion were outside the scope of a tax on the "privilege" of doing business in the Township because the privilege being taxed is the maintenance of an actual, physical, permanent "place of business" or, as the Supreme Court characterized it in *Gilberti*, a "base of operations."

In rejecting the Township's contention, this Court in *QED* held that the contractor's individual transactions within the township were outside the scope of a tax on the "privilege" of doing business in that township because the contractor was not engaged in having a "place of business," but was merely doing the work in that township. This Court stated that a business privilege tax only applies to the privilege of having a base of operations in the taxing jurisdiction, not the privilege of performing underlying transactions within the Township. *QED*, 738 A.2d at 1071.

■ As this Court pointed out in *QED*, a business privilege tax does not tax each

---

Privilege Tax Regulations in Section 103(a) and (c)" which state:

> (a) Whether a person carries on a taxable activity within the meaning of the Business Privilege and/or Mercantile Tax is essentially a question of fact. Any service directed, controlled, or managed by a Scranton office or location or which occurs within or has substantial nexus with the City is subject to the tax. The tax is not limited to transactions occurring entirely within the City.
> (c) A person who engages in a taxable activity in Scranton is subject to this tax whether or not he has a permanent place of business in Scranton....

Again, Scranton has failed to include the regulations in the record. However, based on Scranton's representation of what the regulations state, this Court would not change its analysis of this issue. Like the Ordinance, the amendments to the Ordinance do not constitute a transaction tax. Simply by declaring that a "business privilege tax" applies to business, whether it has a permanent place of business in Scranton, does not validate an otherwise improper attempt to tax an out-of-City business' transactions via a business privilege tax.

and every transaction. To hold otherwise contravenes the holding of the Supreme Court in *Gilberti* that "[t]he 'privilege' of engaging in business within the City, which the [Enabling Act] establishes as a subject that may be taxed, *must be regarded as being separate and apart from 'transactions' within the City that may be taxed. To regard otherwise would be to ignore the significance of the two subjects for taxation having been separately stated in the [Enabling Act]." Gilberti*, 511 Pa. at 106, 511 A.2d at 1324 (emphasis added).

In this case, as in *QED*, Scranton's interpretation of its business privilege tax ordinance may not contravene the Supreme Court's interpretation of the law. The crux of this tax is not upon an isolated, underlying transaction by an out-of-city business which occasionally conducts business in Scranton. Rather, the crux of the tax is upon the annual gross receipts of a business which is "privileged" to engage in business within the City. Our Supreme Court has defined "privilege" as tantamount to having a "base of operations" in the City. *See Airpark International*, 558 Pa. at 4, 735 A.2d at 647. A business privilege tax may not tax individual transactions. Therefore, Scranton's business privilege tax ordinance must not be interpreted to permit Scranton to tax both a base of operations and the underlying individual transactions.

Because it is undisputed that Valvano does not have a base of operations in Scranton, the common pleas court did not

err when it granted summary judgment in favor of Valvano.

In its third issue, Scranton claims that *QED* and *Gilberti* have been "modified, if not invalidated" by *The Philadelphia Eagles v. City of Philadelphia*. Scranton contends that after *Philadelphia Eagles*, Dickson City may no longer impose a business privilege tax on Valvano's revenues generated in Scranton. Therefore, there no longer exists the possibility of double taxation.[8] This Court does not agree.

■ In *Philadelphia Eagles*, our Supreme Court held that the City of Philadelphia could only impose a business privilege tax on revenue generated from games played and broadcasted from within the City of Philadelphia, and not media receipts generated from away games. The Court reiterated the test to be applied in determining whether a state or local tax violates the Commerce Clause of the U.S. Constitution,[9] and focused particularly on the second prong, apportionment.[10] Considering the "external consistency" prong of the fair apportionment test, the Court held that whether a tax is "externally consistent" is determined by applying a subjective test that asks whether a state taxed only that portion of the revenues from the interstate activity which reasonably reflects the instate component of the activity being taxed. The Court concluded that Philadelphia's tax on 100% of the club's media receipts was inherently arbitrary and had no rational relationship to the actual number of the football club's games

---

8. As previously noted, the court of common pleas, relying on *QED* and *Gilberti*, held that Scranton's attempts to tax Valvano for transactions that occurred within the City of Scranton resulted in double taxation on Valvano since Valvano was already taxed by Dickson City on the same transactions.

9. U.S. Const., art. I, § 8, cl. 3.

10. Specifically, a tax will be sustained against a Commerce Clause challenge if it: (1) is applied to an activity with a substantial nexus with the taxing state; (2) is fairly apportioned; (3) does not discriminate against interstate commerce; (4) is fairly related to the benefits provided by the state. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977).

that were played in and broadcast from Philadelphia. *Philadelphia Eagles,* 573 Pa. at 227, 823 A.2d at 132.

First, the Court's analysis in *Philadelphia Eagles* centered on whether the City's tax violated the Commerce Clause. In this controversy, none of the receipts at issue arose out of interstate commerce. Therefore, application of the external consistency prong of the fair apportionment test is misplaced.

Moreover, as previously pointed out, Scranton may not impose a business privilege tax or a transaction tax on Valvano's activities in Scranton. So, regardless of whether Dickson City may in the future impose a business privilege tax on Valvano's activities in Scranton, (an issue which is not before this Court), the risk of double taxation does not exist in this case.

In its fourth issue, Scranton contends that the common pleas court erred because it *sua sponte* granted summary judgment without being faced with a pending motion. Scranton contends that the Rule 1035.2 of the Pennsylvania Rules of Civil Procedure requires that a motion for summary judgment be presented before a court may decide the issue *via* summary judgment. Contrary to Scranton's assertion, the common pleas court did not act *sua sponte,* but properly ruled on the parties' motions for summary judgment which were still pending before it on remand.

The certified record reveals that both the common pleas court and the parties considered the original motions for summary judgment to still be pending after remand. As noted, the common pleas court entered an order on November 19, 2003, which directed the parties to submit additional materials and gave the parties thirty days from that submission to file "supplemental" memoranda of law. Common Pleas Court Order, November 19, 2003, at 1. It is obvious from a reading of Scranton's supplemental memorandum filed on January 16, 2004, that it directed its legal argument solely at the issue of whether summary judgment should be granted. Specifically, Scranton requested that Valvano's motion for summary judgment *"be dismissed"* and further argued that summary judgment should not be granted for the reason that, *inter alia,* there were genuine issues of material fact. Plaintiffs' Supplemental Memorandum Filed Pursuant to Order of Court dated November 19, 2003, January 16, 2004, at 7.

The Commonwealth Court must rely solely on the contents of the certified record, and therefore does not consider unsubstantiated and contradictory allegations in considering the merits of an appeal. Pa.R.A.P.1921. Scranton's description of the events on remand is directly contradicted by the certified record. Scranton's contention is not properly grounded in fact, and has no merit.

In its fifth and seventh issues, Scranton argues that the common pleas court erred in granting summary judgment because Valvano did not produce the tax receipts for the taxes paid to Dickson City and because the court acting *sua sponte,* denied Scranton due process by ordering the parties to file documents to the record which could not be tested through normal discovery.

Both of these issues involve whether there exists a genuine issue of material fact with respect to the taxes paid to Dickson City. Scranton claims these alleged errors preclude the granting of summary judgment in Valvano's favor.

■ Again, because this Court concludes that Valvano is not subject to the imposition of either a business privilege tax or a transaction tax by Scranton, whether Valvano already paid a business

privilege tax to Dickson City is irrelevant. Therefore, this Court finds no error.

Scranton's sixth issue is equally meritless. Scranton argues that "the [common pleas] court never addressed the Motion for Reconsideration." Appellants' Brief at 7. Contrary to this assertion, the certified record reveals that the common pleas court *did* rule on their Motion for Reconsideration in a six page order dated December 4, 2003. On the last page of the order, the common pleas court denied the motion for reconsideration, stating:

> AND NOW, this 4th day of December 2003, upon consideration of plaintiffs' motion for reconsideration of the Order of November 19, 2003, and based upon the reasoning set forth above, it is hereby ORDERED and DECREED that the Plaintiffs' Motion for Reconsideration is DENIED.

Common Pleas Court Opinion, December 4, 2003, at 6.[11]

The common pleas court clearly ruled on Scranton's Motion for Reconsideration. This Court finds no error.

Accordingly, for the foregoing reasons, the order of the common pleas court granting summary judgment in favor of Valvano is affirmed.

### ORDER

AND NOW, this 5th day of November, 2004, the order of the Court of Common Pleas of Lackawanna County in the above captioned case is affirmed.

---

**11.** December 4, 2003, order, which was entered on the docket and made a part of the certified record in this case, indicates that counsel for both parties were notified of the order.